**W. C. GILLOCK, Appellant,**

v.

**The TEXAS & PACIFIC RAILWAY COMPANY, Appellee.**

No. 6930.

Court of Civil Appeals of Texas.

Texarkana.

May 2, 1957.

Faver & Barnes, Jasper, for appellant.

Bibb & Green, Marshall, Earl Roberts, Longview, J. T. Suggs, Wm. G. Duncan, Dallas, for appellee.

CHADICK, Chief Justice.

W. C. Gillock, an engineer for The Texas & Pacific Railway Company, sued his employer under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover a total of $97,000 as damages resulting from personal injuries he allegedly received. The suit grew out of a collision on the 4th day of August, 1952, that occurred when the switch engine operated by Gillock, pushing a box car ahead of it, collided with a string of cars rolling toward the engine on a track in the Dallas yards of the Railroad.

The trial court rendered judgment against Gillock on the answers of the jury to special issues. By their answers the jury exonerated the Railroad on all issues of primary negligence. It answered "None" to the damage issue and found against

Gillock on three of the four contributory negligence issues submitted and on the other that he did not fail to keep a proper lookout. The accident was found to be unavoidable. On the issue of comparative negligence the jury held Gillock and the Railroad equally negligent (50%).

■ Appellant embodies four grounds for reversal in 14 points of error. The points are grouped for discussion and the same procedure is followed here.

The court submitted as a part of the Railroad's defense these two issues:

"Do you find from a preponderance of the evidence that prior to learning of the cars ahead of him, W. C. Gillock was operating his engine at a speed which was excessive for the purpose of coupling into cars?"

"If you have answered the above and foregoing question 'Yes' then answer the following question; otherwise, you need not answer the following question:

"Do you find from a preponderance of the evidence that such operation of the engine at a speed which was excessive for the purpose of coupling into cars, if you have so found, constituted contributory negligence on the part of W. C. Gillock, as that term has been defined to you?"

The plaintiff objected to the form of such issues as being upon the weight of the evidence by assuming the engine was being operated "for the purpose of coupling into cars," contending that whether the engine was being operated for such purpose was a material and seriously disputed issue of fact.

It is not necessary to determine whether the issue as given was upon the weight of the testimony or assumed as true controverted facts because any harm that might have emanated from an improper submission of the two issues is cured by the verdict returned by the jury. These issues were designed to show Mr. Gillock's alleged contributory negligence in operating a switch engine at an excessive speed. The jury's answers to the issues on primary negligence entirely acquitted the Railroad of any negligence and Gillock's contributory negligence or want of it could not be the basis of any judgment to be rendered. Appellant cites several cases in support of his contention that the submission of the two issues was error but they are not applicable to the procedural situation presented by this record. The case of Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 342, Tex.Com.App., adopted by Sup.Ct., controls under the circumstances presented. In that case referring to a similar complaint it was said:

" * * * We do not find it necessary to consider the merits of the assignments raising these questions, for the reason that all of the issues relating to primary negligence of defendant were answered in their favor, and therefore, any error in the manner of submitting issues as to contributory negligence of the deceased are immaterial. No other judgment than the one in favor of petitioners could have been rendered by the trial court on the verdict, and the errors complained of, if any, are therefore harmless."

Similar disposition of this question is made in Adkins v. Texas & P. Ry. Co., Tex.Civ.App., 233 S.W.2d 956, wr. ref. See Rules 434, 503, Vernon's Ann. Texas Rules of Civil Procedure.

■ Fireman Worthy who worked on the engine with appellant at the time of the collision was called as a witness by Mr. Gillock. During cross-examination the fireman testified that four miles per hour was an excessive speed for the purpose of coupling into cars. Previously the appellant had testified that at the time of the collision the engine was being operated at a speed of 10 miles per hour. After

the witness Worthy was dismissed, and the Railroad had closed its case, appellant's counsel offered extracts from the Railroad's "Uniform Code of Operating Rules" and "Time Table No. 53" in rebuttal. These extracts prescribed operating speed of railroad engines under various conditions at various places. On objection of the Railroad this proffered evidence was excluded and appellant excepted and brought the court's action forward in bills of exception.

For the purpose of disposing of this alleged error it is assumed without being decided that this evidence was admissible. The evidence could only be relevant to the issues of appellant's contributory negligence in operating the engine at an excessive rate of speed, and no other contention is made with respect to it.

As pointed out in the preceding discussion of the charge the harmless error rule would prevent a reversal because there was no finding of primary negligence against the Railroad. For the same reason error in the admission or exclusion of evidence in connection with the issues of contributory negligence becomes immaterial. Any error in excluding the extracts from the Company's Rules and Time Tables relevant to such alleged contributory negligence is not reasonably calculated to nor would it probably cause the rendition of an improper verdict. No case passing upon this identical proposition has come to the court's attention, but such rule is inferable from Rules 434 and 503, and the two cases previously cited. Support is found in City Transportation Co. of Dallas v. Davis, Tex.Civ.App., 257 S.W.2d 476, wr. ref., n.r.e., and McCormick v. King, Tex.Civ.App., 268 S.W.2d 552, wr. ref., n.r.e. Appellant's first three points are overruled.

■ The core of appellant's complaint stated in Points 4 to 11 is that the trial court erred in rendering judgment because the undisputed evidence and the overwhelming weight and preponderance of the evidence establishes as a matter of law that appellent sustained injuries and damage in the course of employment which were proximately caused by the Railroad's failure to keep the string of cars with which the engine collided under proper control and adequately manned and that the verdict as a whole is in such violent conflict with the undisputed evidence and the overwhelming weight and preponderance of the evidence as to show the jury was motivated by partisanship, hatred, bias and prejudice in returning its verdict.

Appellant's brief summarizes what his counsel considers to be the undisputed evidence in this record presumably stating it in the light most favorable to his case and the same is reproduced as follows:

"The five loose cars hit his (engineer Gillock's) train a very hard blow, knocking him down between the seat and the instrument panel. About the time that he and the fireman had got up from that fall the same cars struck his train on a rebound knocking him down a second time. His fireman, Mr. Worthy, picked him up and moved him to one side so that the fireman could take the engineer's place and operate the train. The two falls gave rise to very severe pain through his hip and his low back. After the fireman had pulled the train back to the place of its beginning, with the help of the fireman the plaintiff, Mr. Gillock, was able to get down from the cab and go over to a bench being helped to the bench by Mr. Worthy. Then an ambulance was summoned and came and rushed Mr. Gillock to the hospital where some doctor checked him, then rolled him in a wheel chair out to the curb to take a taxicab to his room. He spent the remainder of the night of August 3rd and 4th, and the day of August 4th, at his room in bed. He then went to his home, and after spending the night in pain reported to the hospital of the Texas & Pacific Railway Company in Marshall on the next morning. He

continued to suffer intense pain, but on the third day returned and resumed his work, but soon after resuming his work he began a course of persistent treatment by his regular family physician. The testimony of a * * * witness, Mr. Worthy, who was an employee of the defendant, supports all of that testimony by Mr. Gillock up to the time that he was taken away in the ambulance. He testifies that he had to take over the engineer's duty to return the train to the place of beginning. He had to assist Mr. Gillock off the locomotive and had to assist him to a bench and that thereafter an ambulance came and took him away, and that he finished the night with a different locomotive engineer, one Mr. Thompson.

"Dr. Joe C. Neal, defendant's partisan witness, who had to review his record to determine whether he had ever seen Mr. Gillock at all, did recall after much study that Mr. Gillock was sent to him in the early morning hours of August 4th at St. Paul's hospital, and that he had checked him. By studying his notes he could remember that he found a bruise on Mr. Gillock's left buttock and a 'slight strain to the back' and that he was complaining of pain through his left hip and his low back when he was being examined by the doctor.

"Dr. Khoury testified that he had treated Mr. Gillock intermittently from the accident on August 4, 1952, up to the time of the giving of the witness's testimony, and that in or around March of 1954 he tried to dissuade Mr. Gillock from attempting to carry on his work.

"It was stipulated into the record by the parties to this suit that 'at the time that the collision complained of by W. C. Gillock, the plaintiff, occurred, on August 4, 1952, in Dallas, Texas, the said W. C. Gillock was regularly en-gaged in the performance of his duties as engineer for the defendant, Texas & Pacific Railway Company.'"

Perhaps it should be added to complete the undisputed testimony relevant to these questions that there was evidence before the jury that the appellant received a back injury in 1943 for which he had received compensation, and also an injury in 1955 which had not been compensated at trial time, and that the symptoms in each of those injuries were very similar to those in this suit; that is, the appellant complained of injury and pains in the lumbar region of his back. And Mr. Gillock's doctor had found in 1948 that he had a scaliosis condition (curvature of the spine) not attributable to injury which made one leg shorter than the other which could be relieved to some extent by a built-up shoe heel.

After consulting a doctor at the T & P hospital he did not enter it and returned to to work the following day and continued to work until injured March 22, 1955. Appellant's annual earnings from the Railroad were: 1951, a total of $5,217; 1952, $6,-138; 1953, $6,414; 1954, $5,432. Appellant's monthly pay in 1952 is shown to have been $352.10 in August; $429 in September; $386 in October; $512 in November; $507 in December. He worked 23 days in August; 27 days in September; 21 days in October; 29 days in November; and 29 days in December.

Appellant argues plausibly but cites no authorities in support of the contention that the quoted facts remove the issues of negligence, proximate cause, and injury from the realm of fact to that of law.

Looking to the facts stated, with respect to the negligence and proximate cause issues the question would be: Will reasonable minds reach but one conclusion, or might variable inferences be drawn from such facts leading to different conclusions? Such is said to be the rule for determining the existence or not of a fact issue in Le

Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, and Hammond v. Eplen, Tex.Civ.App., 216 S.W.2d 258, no writ history. Appellant asserts and reaches a reasonable conclusion that the Railroad was negligent in not keeping the string of cars under proper control. Can it be said that the only inference that could arise from the fact that a string of box cars in a railroad yard that were supposed to be stationary but "instead (were) running loose unmanned down an incline at an ever accelerating rate of speed" were loosed and started in such motion by the agents and employees of the Railroad? Or could reasonable minds just as reasonably conclude that the cars were properly spotted but the brakes gave way because of an unknown defect or from interference by an outsider or that the cars had just begun to move immediately before the collision without knowledge or means of knowledge on the part of the Railroad? The facts give rise to inferences as reasonable one way as the other and are susceptible of contrary interpretation. The facts, being subject to differing interpretations, that is, one would show the Railroad negligent, another would exculpate it, a jury issue is presented. And a jury's finding under such facts is supported by evidence of probative value.

A like demonstration may be made regarding the Railroad's alleged negligence in failing to properly man the cars. Conflicting inferences arise from the facts. Reasonable minds might conclude, as appellant does, that it was the Railroad's negligence that permitted the string of cars to be moving down the track unattended by employees able to halt it if danger arose. On the other hand, other equally reasonable minds might conclude in the absence of a showing that the Railroad was responsible for initiating the movements of the cars or that its agents knew, or reasonably should have known of the movement, that it was not negligence in this respect.

The conclusion that a fact issue is presented by this evidence which should be submitted to a jury is supported by Dougherty v. Robb, Tex.Civ.App., 5 S.W.2d 582, 584, wr. dis., where it is said:

"Negligence is a question of fact which must be submitted to the jury, not only where there is sufficient testimony as to the actual facts to leave a reasonable doubt, but also where the inferences which might be fairly drawn from the facts are not certain and invariable, and might lead to different conclusions in different minds."

See also Rial v. Curtis, Tex.Civ.App., 274 S.W.2d 117, 119, wr. ref., n. r. e., where this statement is made:

" * * * In Texas & Pacific Railway Co. v. Hill, 71 Tex. 451, 9 S.W. 351, 353, the Supreme Court of Texas uses the following language: 'We have been cited to no case where it had been held competent for the court to charge upon any particular combination of facts as constituting negligence, save when so declared by law. Courts have insisted upon the right in plain cases to exercise such prerogative, but it has been a barren right, and no exercise of it is known to us by our courts.' The general rule is stated by the Supreme Court in the early case of Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227, 228, as follows: 'According to the rule in this court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.' "

Since it is thought negligence is a fact issue requiring a jury determination, it becomes immaterial in this case whether proximate cause is likewise a question of fact for the jury and a discussion is omitted.

The jury's finding that appellant suffered no damages is pointed to as an instance of the jury's disregarding undisputed facts. However, the extent of injury

and the monetary compensation therefor are matters that can not be measured by a fixed standard and is left to the sound judgment and discretion of a fair jury. The jury in this case had evidence before it from which it might conclude that injury was trivial and exaggerated and occasioned little or no damage, pain, or loss of time.

In Allison v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 29 S.W. 425, 426, no writ history, the rule respecting damages is stated and seems to have particular application under the facts in this case. It is there said:

"Where there is not a legal measure of damages, and where they are unliquidated, and the amount thereof is referred to the discretion of the jury, the court will not ordinarily interfere with the verdict. It is the peculiar province of the jury to decide such cases under appropriate instructions from the court, and the law does not recognize in the latter the power to substitute its own judgment for that of the jury. Although the verdict may be considerably more or less than, in the judgment of the court, it ought to have been, still it will decline to interfere unless the amount is so great or small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake."

A fuller statement of the rule is made in Murray v. Missouri, K. & T. Ry. Co., Tex. Civ.App., 79 S.W.2d 334, no writ history, and the reasoning in that case well might be applied to this case. The pertinent language of that opinion is:

"The jury answered issue No. 3 that he received injuries in the collision, and issue No. 16 that his compensation for his injuries was 'None.' There is evidence in the record sufficient for the jury that plaintiff suffered no money loss from his injuries. When we consider the other feature, that is, pain and suffering, these are matters which must be left largely to a jury's discretion. They see the witnesses and hear them on the stand. What seems large in black and white may dwindle to insignificance in the larger picture which the jury sees in the trial court. The symptoms are wholly subjective. The rule that guides us works both ways. We have often affirmed judgment that seemed to us large, and the same rule must apply when it comes to the other side of the same situation. There is no evidence in the record which suggests prejudice or jury misconduct. We are directed to the opinion that the jury believed appellant's pain and suffering was not of such gravity as to be practically compensable or that they believed it was caused by his other ailments."

Appellant contends that the jury's answers to the special issue show conclusively that it was motivated by partisanship and prejudice, laying particular emphasis on the fact that the jury answered that Mr. Gillock was not working in the course of his employment at the time of the collision, when, as a matter of fact, there was an agreement between the parties that he was so employed. Examination of the charge shows that the jury answered issue No. 1 that appellant did not sustain an injury. And the following issue referred to "said injury, if any" and asked whether it was sustained while Mr. Gillock was engaged as an employee in the course of his employment. There was no objection to the issues as formed and submitted. It is understandable that laymen on the jury might not give effect to the words, "if any", following the words "said injury", and might think that in answering issue No. 2 that Mr. Gillock was in the course of his employment, imported that he was also injured on that occasion. Such explanation of the jury's conduct is as reasonable as a conclusion that it was fired with prejudice and partisanship.

 No case has been cited holding that a court may, simply because all issues were answered favorably to one side and unfavorably to the other, say such answers are evidence that a jury is motivated by part-

isanship or prejudice, something additional must be shown. Connecting the jury's failure to find this agreed fact of employment with its other answers appellant has made persuasive argument of such motive on the jury's part and finds great significance in the court's wording of the issues, reproduced in third paragraph of this opinion. This argument contends the court told the jury that Gillock was operating the engine at an excessive rate of speed and because of the great reliance and confidence the jury reposed in the trial judge, the jury concluded that the plaintiff was a dangerous and negligent man and became so prejudiced against him that they answered the issues of primary negligence and damage to his detriment. However, this court can not agree that such statement of the trial court probably had such far-reaching effect. Perhaps comment on the weight of the evidence would cause a jury to answer unfavorably the issues involving excessive speed, but in the absence of a more conclusive showing by other facts, it can not be presumed that submission of an issue such as shown here would cause an ordinary jury to disregard its oath and duty and enter a course designed to prevent a person, it actually believed to have received serious injuries, from receiving compensation. That the jury was not determined to answer all issues unfavorably to appellant is shown by its answer that appellant's negligence was only 50% of the combined negligence of both appellant and appellee and that appellant did not fail to keep a proper lookout.

■ Appellant by his last two points asserts that there is a fatal conflict in the verdict of the jury in that the finding that the collision was an unavoidable accident conflicts with the finding that the collision was caused by the negligence of Mr. Gillock; and that a conflict exists between the answer to the unavoidable accident issue and the special issue which found that Mr. Gillock's contributory negligence was 50% of the combined negligence of him and the Railroad.

Without prolonging the opinion to demonstrate, it may be stated that the application of the rule announced in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, to this verdict would show no conflict to exist. The Little Rock case has been recently reaffirmed in Luther Transfer & Storage Co. v. Walton, Tex., 296 S.W.2d 750. A modification of the rule was announced in Texas Employers Ins. Ass'n v. Collins, Tex., 295 S.W.2d 902, but it is not controlling as it has application only where giving effect to the jury answer would result in an equivocal judgment. That is, favorable answers to issues would permit two conflicting and distinct judgments to be entered in favor of the prevailing party.

Consideration of all appellant's points of error leads to the conclusion that reversible error is not shown and they are respectfully overruled, and the judgment of the trial court affirmed.